UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 19 CR 864 |
| RISHI SHAH, SHRADHA AGARWAL, AND BRAD PURDY. | Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

The government has submitted a *Santiago* proffer [277], seeking the preliminary admission of statements pursuant to Federal Rule of Evidence 801(d)(2)(E). Defendants filed responses in opposition, and the government filed a reply. For the following reasons, the Court conditionally admits the statements listed in the appendix to the government's *Santiago* proffer and reserves ruling on other statements sought to be admitted under the coconspirator exception.

**Legal Standard**

Under Federal Rule of Evidence 801(d)(2)(E), a "statement" is not hearsay if it "is offered against a party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." It is well-settled Seventh Circuit law that a district court may admit coconspirator statements conditionally based on the government's pretrial proffer, known as a "*Santiago* proffer." *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016) (citing *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), *overruled in part on other grounds by Bourjaily v. United States*, 483 U.S. 171, 176–

1

81 (1987)). Coconspirator statements are admissible if the Court finds by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the person making the statement were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *United States v. Quiroz*, 874 F.3d 562, 566 (7th Cir. 2017) (citations omitted).

Although Rule 801(d)(2)(E) refers to "coconspirators," the Rule applies to both formal conspiracies and joint ventures. *United States v. Reynolds*, 919 F.3d 435, 439 (7th Cir. 1990) ("Although the existence of a conspiracy allows the prosecution to use co-conspirator statements that would otherwise be hearsay, it is not necessary to charge a conspiracy in order to take advantage of Fed. R. Evid. 801(d)(2)(E); it is enough to show that a criminal venture existed and that statements took place during and in furtherance of that scheme."). In fact, citing a Seventh Circuit case, the Notes of the Committee on the Judiciary for Rule 801 make clear that "[w]hile the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged." Fed. R. Evid. 801, Notes of Committee on the Judiciary, Senate Report No. 93-1277 (citing *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969)). This makes sense considering that the Federal Rules of Evidence apply to criminal and civil cases alike.

As to the first element, the government must establish by a preponderance of the evidence that there was a joint venture for an illegal purpose, or for a legal

2

purpose using illegal means. *United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979). And as to the second, the government must show that it is more likely than not that Defendants "(1) knew of the conspiracy and (2) intended to associate [themselves] with the criminal scheme." *United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir. 1995) (citation omitted).

In determining both the existence of a joint venture and a defendant's participation in it, the Court can consider the statements sought to be admitted. *Bourjaily*, 483 U.S. at 176–81. But the contents of the proffered statements alone are not sufficient to establish these factors; there must also be corroborating evidence independent of the statements themselves. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

As to the third element of whether a statement was made "in furtherance" of the joint venture, courts evaluate the statement in the context in which it was made and look for a "reasonable basis" on which to conclude that the statement furthered the venture. *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). Generally, a statement that is "part of the information flow between conspirators intended to help each perform his role" satisfies the "in furtherance" requirement. *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009). In addition, a statement to conceal a joint venture where ongoing concealment is a purpose of the joint venture is a statement "in furtherance" of the joint venture. *United States v. Gajo*, 290 F.3d 922, 928–29 (7th Cir. 2002).

In all, there is a "relatively low burden of proof" on the admissibility of co-venturer statements. *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). If the Court determines the statements are admissible, the jury may consider them for any purpose. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991). Any statement made by a co-venturer during and in furtherance of the joint venture is admissible against all co-venturers. *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).

However, admission of the statements pursuant to a *Santiago* proffer is conditional. *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999). The *Santiago* procedure requires the government to "close the evidentiary loop at trial." *Davis*, 845 F.3d at 286. "If at the close of its case the prosecution has not met its burden to show that the statements are admissible, the defendant[s] can move for a mistrial or have the statements stricken." *Haynie*, 179 F.3d at 1050.

## Analysis

Here, the government proffered an extensive and detailed "preview" of the evidence as to all Defendants. *See Alviar*, 573 F.3d at 540. In addition to identifying categories of statements it seeks to admit under Rule 801(d)(2)(E), the government included a list of statements, its bases for admission under Rule 801(d)(2)(E), and alternative bases for admission in an appendix attached to its proffer. The appendix does not include every statement that the government seeks to admit under Rule 801(d)(2)(E), nor does it have to. *United States v. McClellan*, 165 F.3d 535, 553 (7th Cir. 1999).

At the outset, most of the statements the government seeks to admit are admissible as statements by a party opponent under Rule 801(d)(2)(A). Still, the distinction between admitting a statement under the coconspirator exception and under the party admission exception is a meaningful one. Under the former, a statement can be considered against all Defendants, while under the latter it may only be considered against the Defendant who made it. But since many of the statements are admissions, they serve as the independent evidence, coupled with co-venturer statements themselves, to support conditional admission.

The government's comprehensive *Santiago* proffer satisfies its burden. First, the proffered evidence shows, by a preponderance, a joint venture to defraud through: (1) selling clients inventory (screens or devices on which pharmaceutical advertisements would run) that Outcome Health did not have; (2) routinely under-delivering on the contracted-for terms of clients' advertising campaigns; and (3) concealing the extent of under-delivery from clients, an outside auditor, and lenders and investors who relied on the alleged misrepresentations in providing hundreds of millions of dollars in funding to Outcome Health.

Second, the government demonstrated, by a preponderance, that Defendants associated themselves with the joint venture and its criminal purpose. The proffered evidence illustrates the roles of each Defendant in the scheme. Specifically, Shah and Agarwal developed and sent list matches to clients that misrepresented current inventory, were aware of pervasive under-delivery issues, and sought to conceal those issues from salespersons and clients through siloing data, presenting performance

5

data in a misleading way, and dismissing employees' concerns. Purdy took part in the deceptive list-match process, developed inflated tablet metrics, knew about and agreed to conceal under-deliveries, and helped raise money from investors based on inflated revenue numbers.

Third, the government showed, by a preponderance, that the statements by Defendants and other co-venturers that are identified in the appendix were made in furtherance of the joint venture. The statements reflect the declarants' efforts to conduct the business of the previously described joint venture, including through acts of concealment.

Defendants' various arguments to the contrary are unavailing. To begin, Shah and Agarwal attempt to map the requirements of proving a criminal conspiracy onto the government's *Santiago* burden. But it is well-established that for admissibility under Rule 801(d)(2)(E), the government is not required to establish the elements of a conspiracy, such as a meeting of the minds and an overt act. *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983). Instead, the government only needs to prove that Defendants engaged in a joint venture by a preponderance of the evidence. It has done so here.

Further, the government has not, as Shah and Agarwal assert, described separate, narrower schemes. It is not difficult to see how the evidence connects to reveal a single, cohesive joint venture. This case is focused on a single company, indeed a set of executives at that single company. All actions taken were, at least on their face, assumed to be in the interest of that single company making money,

6

whether through sales, loans, or investments. And all of the Defendants and other co-venturers had an incentive to maximize revenue, either by virtue of their roles in the company or, in the case of Shah and Agarwal, their ownership interests. That the Defendants point the finger at Ashik Desai as the purported mastermind of the fraud does not change the calculus. By way of comparison, this is not a case where one individual runs a cocaine ring or some other unrelated criminal enterprise while sitting in his employer's office or using his employer's phones. The scheme alleged is one by executives and employees to defraud the clients, lenders, and investors of Outcome Health through and in an effort to further the success of the business. There was no separate side-scheme, just different roles by its participants and different ways at various times to further the interests of the joint venture.

Purdy's argument that the proffer points to only two "modules" of evidence that he "actively participated" in the scheme fares no better. Purdy seemingly ignores other evidence proffered by the government that shows his touchpoints with the scheme, such as evidence that he knew about inflated tablet metrics in client presentations, negotiated separation agreements with employees who reported concerns about performance results, received complaints by employees about contract fulfillment and reported ROIs, denied knowledge of actual, suspected, or alleged fraud in representations to Outcome Health's auditor, and took part in raising money from investors. Viewing the evidence altogether, it is more likely than not that Purdy engaged in a joint venture to defraud Outcome Health's clients, investors, and lenders.

7

Purdy further argues that other evidence refutes the proffered evidence regarding his participation in the scheme, such as the anticipated testimony of Analyst A and Desai. In particular, Purdy calls into question the veracity of the anticipated testimony of Desai about a data request from Outcome Health's auditor he reportedly discussed with Purdy. As discussed, this is not the only evidence the government proffered of Purdy's involvement in the joint venture, far from it. But even if it was, Purdy uses the wrong lens. This is not a summary judgment motion where the Court looks at whether there is a genuine dispute of material fact, such that Purdy's identification of a dispute precludes conditional admission. Rather, the Court reviews the evidence as proffered, which includes "assum[ing] the government knows what its witnesses will say at trial," and determines whether it more likely than not that there was a joint venture, that Defendants participated in it, and that the statements were made in furtherance of it. *Davis*, 845 F.3d at 286. If the government checks these boxes, its job is still not done. The government must then "close the evidentiary loop" at trial. *Id.* Here, the government has proffered evidence sufficient to allow conditional admissibility under *Santiago* at this juncture. It may be that Desai does not testify in a manner consistent with the proffer, or that his testimony is as anticipated but other evidence differs from what was proffered. But "closing the loop" happens at trial, not now. Indeed, *Santiago* does not require that the Court hear testimony pre-trial from Desai or have competing affidavits that challenge the veracity of the government's proffer. *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991) ("[T]he district court need not conduct a 'full blown' hearing on

8

the proffer wherein the defendant is given an opportunity to contest the veracity of the evidence contained therein.") (citation omitted).

Purdy also argues that statements made before he began working at Outcome Health should not be admissible against him. When faced with a similar argument, the *Coe* court pointed to the "well-established principle that statements of coconspirators before a defendant joins the conspiracy are nonetheless admissible against him." 718 F.2d at 839; *see also United States v. Arrellano*, 757 F.3d 623, 634 (7th Cir. 2014) (holding that it was "irrelevant" when the defendant joined the conspiracy so long as he joined at some point). However, *Coe*, *Arrellano*, and other cases applying these principles from conspiracy law involved charges of conspiracy. Here, the government has alleged a scheme to defraud but has not charged a conspiracy. The Court declines to adopt principles of conspiracy law in allowing statements made before Purdy ever worked at Outcome Health to be considered against him. Accordingly, the two co-venturer statements made before June 2012 that are listed in appendix are not admitted as to Purdy. It will be up to Purdy to request a limiting instruction at the appropriate time at trial.

## Conclusion

In the end, the government has met its burden for the conditional admissibility of the statements identified in the proffer. The statements listed in the appendix to the government's proffer are conditionally admitted under Rule 801(d)(2)(E). As for statements not included in the appendix, the Court will hear argument on an individual basis as the case develops, if necessary. If that process becomes unwieldy,

the Court may require that the government preview statements, outside of the presence of the jury, in an organized manner with accompanying proffers. In addition, in light of the government's representation at the final pretrial conference that the co-venturers comprise the individuals named as such in the *Santiago* proffer, the Court denies Defendants' request for the government to identify all co-venturers as moot.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 3, 2023