# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19 CR 864 |
| vs. | Hon. Thomas M. Durkin |
| | United States District Judge |
| RISHI SHAH, SHRADHA AGARWAL, and BRAD PURDY | |

## DEFENDANT RISHI SHAH'S MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY FOR NEW TRIAL

Defendant Rishi Shah, by and through his undersigned attorneys and pursuant to Federal Rules of Criminal Procedure 29 and 33, respectfully moves this Honorable Court to enter a judgment of acquittal or, in the alternative, a new trial.

- 1 -

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   THE GOVERNMENT'S FAILURE TO ADMIT SUFFICIENT EVIDENCE TO
SUSTAIN A CONVICTION NECESSITATES A JUDGMENT OF ACQUITTAL ......2

    A.    Standard ....................................................................................................2

    B.    Evidence at Trial .......................................................................................3

        1.    The Government Failed to Prove that Mr. Shah Defrauded Pharmaceutical
Companies ....................................................................................................3

        2.    The Government Failed to Prove that Mr. Shah Defrauded Banks and
Investors ......................................................................................................7

            (a)    The Deloitte Audit Does Not Prove Mr. Shah's Knowing and
Willful Participation in a Fraudulent Scheme ...............................7

            (b)    Outcome's Investment Meetings Do Not Prove Mr. Shah's
Knowing and Willful Participation in a Fraudulent Scheme ........8

            (c)    Mr. Shah's Prior Statements Do Not Establish His Knowing and
Willful Participation in a Fraudulent Scheme ............................10

        3.    The Government Failed to Prove that Mr. Shah Silenced Whistle Blowers
....................................................................................................................10

        4.    The Government Failed to Prove that Mr. Shah Siloed Employees or
Concealed Installation Numbers .............................................................11

        5.    The Government Failed to Prove that Mr. Shah Engaged in Money
Laundering ...............................................................................................12

III.   CONCLUSION ............................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## <u>Cases</u>

*United States v. Chanu*,
    40 F.4th 528 (7th Cir. 2022) ........................................................................ 4

*United States v. Garcia*,
    919 F.3d 489 (7th Cir. 2019) .................................................................... 3, 6

*United States v. Giles*,
    246 F.3d 966 (7th Cir. 2001) ........................................................................ 4

*United States v. Groves*,
    470 F.3d 311 (7th Cir. 2006) ........................................................................ 6

*United States v. Jones*,
    713 F.3d 336 (7th Cir. 2013) ........................................................................ 3

*United States v. Seidling*,
    737 F.3d 1155 (7th Cir. 2013) ..................................................................... 2

*United States v. Wilson*,
    879 F.3d 795 (7th Cir. 2018) ........................................................................ 2

## <u>Rules</u>

Fed. R. Crim. P. 29(a), (c) ............................................................................... 2

6453199

I.      PRELIMINARY STATEMENT

The Court should grant a judgment of acquittal because of the Government's failure to prove the fraudulent scheme charged in the Superseding Indictment (the "Indictment").  To prove its charges against Mr. Shah beyond a reasonable doubt, it was not enough for the Government to prove that fraud occurred at Outcome Health (hereinafter, "Outcome").  It also was not enough for the Government to prove that Mr. Shah knew Outcome under-delivered on campaigns, a risk that is widely known in the advertising industry and accounted for by contract.  The Government needed to prove the specific scheme alleged in the Indictment, which accuses Mr. Shah, his co-defendants and Ashik Desai of *knowingly, intentionally,* and *systemically* defrauding clients, investors, auditors and employees from 2011 to 2017.  Even construing the evidence in the light most favorable to the Government, no rational jury could have found this scheme to have been proven beyond a reasonable doubt.

To be sure, the Government did show evidence of fraud within Outcome. But the evidence just as clearly showed that the fraud was executed and concealed by Ashik Desai without Mr. Shah's knowledge or involvement. (Trial Tr. at 4976:12 – 20 [Desai testifying that he was "solely responsible" for ROI fraud]; GX 762 at 2 [Desai deceiving Mr. Shah by telling him that Outcome Health was operating "with the utmost integrity" in 2016]; GX 715 [Desai telling Shah that Outcome would "of course" "be very transparent and candid with the client"]). The Government's failure of proof against Mr. Shah was apparent after its second witness, Jason Ketchum, testified that there was "[n]ever an intent" to defraud Outcome's clients. (Trial Tr. at 1516:9 – 15).

That the jury did not find a single unitary scheme to defraud as charged in the Indictment is also clear from its judgment of acquittal on Count 23, which charged fraud related to the

- 1 -

Belsomra campaign. Nothing distinguished the Government's evidence on Belsomra from the other fraud counts. At trial, the Government argued – as it did with each of the other counts – that Mr. Shah was guilty of defrauding Belsomra because the jury had seen "the invoice from Outcome billing the Belsomra client for full delivery and the accompanying affidavit of performance attesting to full delivery on the contract." (Trial Tr. at 9421:25 – 9422:4). The only distinguishing factor in Count 23 was that the Government attacked Purdy's counsel's cross of a Belsomra related witness. (Trial Tr. at 9422:11 – 23 [the Government accusing Mr. Purdy's counsel of "blaming the victim"]).

Simply stated, Mr. Shah's convictions cannot stand because the Government failed to establish the elements of the charged offenses. Mr. Shah moves for his conviction to be vacated and a judgment of acquittal be entered.

## II.     THE GOVERNMENT'S FAILURE TO ADMIT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION NECESSITATES A JUDGMENT OF ACQUITTAL

The jury convicted Mr. Shah on Counts 1, 2, 4, 5, 9 – 19, 22, and 24 – 26. As set forth below, the evidence admitted at trial fell well short of proving these Counts beyond a reasonable doubt.

### A.     Standard

This Court "must enter a judgement of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). A convicted defendant must be acquitted when no "rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Seidling*, 737 F.3d 1155, 1159-60 (7th Cir. 2013). While the evidence is viewed in the light most favorable to the Government, the verdict cannot be upheld based "on the piling of inference upon inference." *United States v. Wilson*, 879

- 2 -

F.3d 795, 802 (7th Cir. 2018). The jury can make reasonable inferences based on the evidence presented at trial, but not those "motivated by or made possible by speculation[.]" *United States v. Jones*, 713 F.3d 336, 347 (7th Cir. 2013).

In this manner, "the judge is still responsible for enforcing outer limits on reasonable inferences, guided by the relevant standard of proof." *United States v. Garcia*, 919 F.3d 489, 497 (7th Cir. 2019). "The question [is] not whether a logical set of inferences could show the charge was possibly or even likely true, but whether it could be inferred *beyond a reasonable doubt* that the defendant was guilty as charged." *Garcia*, 919 F.3d at 501 (emphasis original).

**B.     Evidence at Trial**

    **1.     The Government Failed to Prove that Mr. Shah Defrauded Pharmaceutical Companies**

Counts 1, 2, 4, 11, and 25 charged Mr. Shah with mail and wire fraud relating to specific payments Outcome Health received from pharmaceutical company clients for specific campaigns.[1]

This Court rightly instructed the jury that it was the Government's burden to prove beyond a reasonable doubt that, among other things, Mr. Shah *intended* to defraud Outcome's pharmaceutical clients. (Trial Tr. at 9156:24–25; Dkt. 444 at 23 (Instruction No. 22); *see also* Pattern Criminal Jury Instructions of the Seventh Circuit at 611). This Court also instructed the

---

[1] Count 1 charged the February 2, 2015, mailing of a $53,000 check from Pfizer (GX 438) to pay Outcome's November 1, 2014, invoice for the Xeljanz campaign (GX 410). Count 2 charged the February 4, 2015, mailing of a $229,000 check from AbbVie (GX 439) to pay Outcome's November 1, 2014, invoice for the Humira campaign (GX 409). Count 4 charged the May 14, 2015, mailing of a $89,000 check from Biogen (GX 466) to pay Outcome's February 1, 2015, invoice for the Tecfidera campaign (GX 437). Count 25 charged the April 24, 2017, mailing of a $566,799 check from Pfizer (GX 930) to pay Outcome's February 1, 2017, invoice for the Xeljanz campaign (GX 836).

- 3 -

jury: "A person acts with intent to defraud if he or she acts knowingly with the intent to deceive or cheat the victim in order to cause a gain of money or property to the defendant or another, or the potential loss of money or property to another." (Trial Tr. at 9159:24 – 9160:3; Dkt. 444 at 30 [Instruction No. 28]; *see also* Pattern Criminal Jury Instructions of the Seventh Circuit at 622 [similar]; *United States v. Giles*, 246 F.3d 966, 973 (7th Cir. 2001) ["Intent to defraud" means "the specific intent to deceive or cheat the victim, either for financial gain or to cause financial loss."]; *United States v. Chanu*, 40 F.4th 528, 542–43 (7th Cir. 2022), *cert. denied sub nom. Vorley v. United States*, 143 S. Ct. 746 (2023), *and cert. denied*, 143 S. Ct. 746 (2023) ["You need deception, and you need an intent to cause loss of money or property, *i.e.*, intent to harm."]).

A rational jury could not have found Mr. Shah guilty of the scheme charged in the Indictment because there was no evidence he willfully participated in fraud of any sort. The evidence instead showed that the fraud committed against Outcome's clients was schemed, isolated and hidden by Ashik Desai. It is Desai who lied to clients about Outcome's inventory (DX 10613, Trial Tr. at 4528:12 – 20); it is Desai who falsified affidavits (GX 436; Trial Tr. at 4530:13 – 14); it is Desai who conspired with David Ma to falsify engagement metrics to conceal under delivery (DX 3152; Trial Tr. at 4535:8 – 12; 3927:11 – 13); it is Desai who falsified IMS reports (Trial Tr. at 4545:24 – 4546:1); and it is Desai who concealed this fraud from Mr. Shah. (DX 10616; Trial Tr. at 4551:9 – 16, 4552:14 – 19).

In Closing, the Government argued that Mr. Shah's intent to defraud Outcome's clients was proven by three supposed facts:

1. Mr. Shah knew about Outcome's projections and under-deliveries on prior campaigns;

2. Mr. Shah knew that Outcome's 2015 revenue goal was met, "which meant that clients were being billed in full despite the under-deliveries"; and

- 4 -

3. Mr. Shah "knew that there had been no make-goods for 2015."

*See* Trial Tr. at 9300:6 – 8 ("The inescapable conclusion from these three facts is that [Mr. Shah] knew the company was selling and invoices for inventory it did not have.").

None of this established Mr. Shah's fraudulent intent beyond a reasonable doubt. As it concerns Outcome's delivery on prior campaigns, at most, the evidence submitted by the Government showed that Mr. Shah had a generalized sense that Outcome on occasion experienced operational errors and did not always deliver on projections. (*See* GX 41; GX 136; GX 183; GX 196; GX 263; GX 272; GX 313; GX 330; GX 400; GX 428; GX 594; GX 701; GX 704; GX 1104). But proof of occasional under-deliveries, an understood risk in the industry that is accounted for by contract, is not proof of fraud beyond a reasonable doubt. What the Government needed to prove the fraudulent scheme charged in the Indictment, and what the jury did not see, was evidence that Mr. Shah knew: (1) the terms of the charged pharmaceutical contracts and whether those contracts allowed for growth or weighted average delivery; (2) what Outcome delivered on the particular campaigns contemplated under those contracts; (3) that Outcome was providing false proof of performance documents to those clients; and (4) what Outcome billed those clients. It did not close the loop for any of the pharmaceutical campaigns charged as wire or mail fraud counts. In fact, the Government even stipulated that as to its own demonstratives for Counts 1, 2, 4, 23, and 25, Mr. Shah's name did not appear on the supporting documents.[2] (Trial Tr. at 8478: 20 – 23). The Government attempted to fill this evidentiary shortfall with ipse dixit argument – a tactic that cannot sustain a conviction.

---

[2] As to the Government's recurring references to documents and emails on which Mr. Shah was not copied, needless to say, there is no evidence that Mr. Shah ever saw these documents and they cannot establish his fraudulent intent.

- 5 -

The Government's remaining two categories of evidence are equally irrelevant. Regarding Outcome meeting its 2015 revenue goals, the Government did not admit any evidence that Mr. Shah knew those goals could only be met if clients were "billed in full" despite under-deliveries; this is an inference that the Government asked the jury to make without any evidence. And regarding make goods, the Government submitted no evidence that Mr. Shah knew Outcome had not issued make goods for 2015; once again, the Government requested the jury to take a leap of faith and infer such knowledge because Mr. Shah was aware of *later* make goods issued by the company. (Trial Tr. at 9270:1 – 3 ["Shah and Agarwal knew [about there being no make-goods in 2015] [b]ecause when make-goods finally started to be given in late 2016, [they] talked about them extensively."]). These arguments are an invitation to the jury to convict on speculation, and it cannot prove the Government's charges beyond a reasonable doubt. *See Garcia*, 919 F.3d at 503 ("[E]vidence that calls for inferences that are "motivated or made possible by speculation" … will fail to carry the government's burden."); *United States v. Groves*, 470 F.3d 311, 324 (7th Cir. 2006) (speculation cannot be the basis for proof beyond a reasonable doubt).

It is no answer that Mr. Shah must have or should have known about Desai's fraud because Mr. Shah was Outcome Health's CEO. As the CEO of a large and scaling company, Mr. Shah could not possibly keep up with the details of every relationship, contract, or operational issue. For that reason, Mr. Shah – like most Chief Executive Officers – delegated management of client contracts and campaigns to senior members of his team, such as Desai. Mr. Shah was clearly mistaken to place his trust in Desai, but that does not prove intent and cannot make him guilty of fraud.

- 6 -

2.      The Government Failed to Prove that Mr. Shah Defrauded Banks and
        Investors

Counts 9 and 13 of the Superseding Indictment charge Mr. Shah with bank fraud (GX 573, GX 577, GX 698, GX 1225). Specifically, these Counts allege that Mr. Shah participated in a scheme to defraud JP Morgan, Citizens, Goldman Sachs, Wells Fargo, Wintrust Bank, and the Private Bank and Trust Company. Counts 22, 24 and 26 of the Superseding Indictment charge Mr. Shah with wire fraud (GX1291, GX1204, GX1081). Specifically, these Counts allege that Mr. Shah fraudulently caused Goldman Sachs, Capital G, and Leerink to wire certain monies to Outcome. The only evidence in support of these Counts proved what was never in dispute: these institutions were victims of a fraud perpetrated by Ashik Desai. As discussed *supra*, the Government has failed to prove beyond a reasonable doubt that Mr. Shah knew of or participated in any fraud at Outcome. The Government's arguments in support of Mr. Shah's intent to defraud the financial institutions named in the Indictment fail for similar reasons.

(a)     *The Deloitte Audit Does Not Prove Mr. Shah's Knowing and
        Willful Participation in a Fraudulent Scheme*

The Government argued that Mr. Shah's intent to defraud banks and lenders was proven by an independent audit he authorized Deloitte to perform on Outcome. This argument is absurd on its face: the Government claimed that Mr. Shah's *voluntary* decision to hire the world's largest accounting firm to audit his company, and to give that firm unrestricted access during its investigation, was somehow evidence of intentional fraud. (Trial Tr. at 7289:23-7290:3 ["This wasn't like some government-mandated audit, right? A. That's correct."]; Trial Tr. at 7290:6 – 12 [Deloitte was given "full access" and "nobody ever said no" to Deloitte's requests for information]).

- 7 -

The Government attempted to turn this act of transparency and accountability into evidence of intent to defraud in three ways. First, the Government claimed that Mr. Shah did not tell Deloitte about Desai's fraudulent activities, which led to an inaccurate report. Second, the Government claimed that Mr. Shah lied during "fraud inquiry meetings," wherein Mr. Shah stated he was unaware of fraud at Outcome Health. Third, the Government claimed that Mr. Shah repeated this alleged lie in Deloitte's management representations letters, which were later shared with investors. But this "evidence" could only prove Mr. Shah's intent to defraud if the Government also proved that Mr. Shah knew of the charged fraud at the time Deloitte performed its audit. As discussed *supra,* the Government failed to make that showing; the record instead shows that Desai actively lied and disguised his fraud from Mr. Shah, and that Mr. Shah trusted Desai to help run Outcome with integrity. (Trial Tr. at 4018:13 – 18; 4551:9-16; 5813:22 – 24; 4584:12 – 17). Mr. Shah cannot disclose information he does not know.

> (b)    *Outcome's Investment Meetings Do Not Prove Mr. Shah's*
> *Knowing and Willful Participation in a Fraudulent Scheme*

The Government argued that Mr. Shah intended to defraud Outcome's investors because he attended investment presentations where misrepresentations were made about Outcome's services and revenue. But the Government did not carry its burden of showing that Mr. Shah *knew* that these representations were false at the time. Indeed, each of the Government's specific arguments are insufficient to establish Mr. Shah's fraudulent intent:

- The Government argued that Mr. Shah attended meetings where inflated revenue figures and ROI numbers were shared with representatives of Leerink, Goldman Sachs, and Capital G. There is no evidence that Mr. Shah knew these ROI numbers were inaccurate, nor that Mr. Shah knew Outcome's revenue was fraudulently inflated. To the contrary, as

- 8 -

discussed *supra*, the evidence shows that this fraud was executed and concealed by Ashik Desai without Mr. Shah's support or knowledge.

- The Government pointed to a Leerink presentation that identifies a shift away from agency-based contracts as one of the reasons Outcome fell short of its expected revenue in the first Quarter of 2017. (GX 932-4). The Government claimed this was a misrepresentation because the miss was in-fact caused by Outcome's ROI shortfalls and make-goods. But the Government did not submit any evidence that this shift from agency-based contracts was not a causal factor in the revenue miss. Nor did the Government present any evidence that Mr. Shah knew of any alternative causes for the revenue shortfall other than what is cited in the Leerink presentation.

- The Government argued that Mr. Shah "misrepresented" that Outcome had never missed an ROI guarantee with its clients. But Outcome's investment presentation decks tell the real story: the Outcome team only stated that Outcome had never paid *out of pocket* for missed ROI guarantees. (GX729; GX 777). This was true, and the Government's unfounded position that this statement was misleading does not amount to evidence of intent to defraud.

As with its Deloitte theory, the Government argued in the alternative that Mr. Shah's fraudulent intent is proven by what he did *not* say during Outcome's investment meetings. Specifically, the Government cited testimony from investors that they were unaware of altered ROI studies, inflated tablet metrics, whistleblowers, concealed campaign under-delivery, falsified affidavits, or revenue and layoff concerns. First, the Government was wrong: the record shows much of this information *was* disclosed to investors. (*See* DX 4737 [report disclosing Sean Bogdany's whistleblower claims to investors]; DX 12255 [investor thanking Mr. Shah for

- 9 -

6453199

"candor and transparency" after Mr. Shah voluntarily disclosed Outcome's revenue miss]; DX 12031; DX 12032). Even assuming this information was not disclosed, before that lack of disclosure could become even marginally relevant to proving Mr. Shah's fraudulent intent, the Government would need to prove that Mr. Shah knew about this information when these investment meetings took place, which the Government did not (and could not) do.

> (c) *Mr. Shah's Prior Statements Do Not Establish His Knowing and Willful Participation in a Fraudulent Scheme*

In a last-ditch effort to fill the evidentiary hole in the charges, the Government pointed to passing, irrelevant statements made by Mr. Shah as somehow evidencing his fraudulent intent. For example, the Government cited a Voxer by Mr. Shah in which he stated, "Google data was false and crazy in the early years." (Trial Tr. at 10268:6 – 7). But Mr. Shah's statement about what happened with a *separate* company *decades ago* does not prove that he authorized fraud at Outcome Health beginning in 2011. The Government also cited Mr. Shah's supposed lie during an Outcome Health Townhall meeting that he did not know about the fraud reported by the Wall Street Journal. (Trial Tr. at 10269:9 – 14). As the Defense established at trial, however, these unprepared remarks– when viewed in their full context – were accurate to the best of Mr. Shah's knowledge.

> **3.** The Government Failed to Prove that Mr. Shah Silenced Whistle Blowers

Unlike the other mail and wire fraud counts in the Indictment, Counts 14 through 19 are not linked to a particular Outcome customer, investor, or lender. The wire communications underlying those counts – Voxers, iMessages, and emails between Mr. Shah and Ms. Agarwal over a brief period in early 2017 – are not to or from an alleged victim and do not relate to any alleged victim. Instead, those internal corporate communications concern allegations made by three

- 10 -

Outcome employees (Sameer Kazi, Adam Prowker, Liane Pierce, and Sahir Raoof) about Desai's unethical practices. Because the Government failed to prove that the communications were "for the purpose of executing" the scheme to defraud alleged in Count 1, judgment of acquittal must be entered on Counts 14 through 19. Mr. Shah joins in the arguments made in Ms. Agarwal's briefing.

As to Count 19, Mr. Shah's email forwarding Mr. Prowker's letter to Mr. Desai has the same deficiencies as Counts 14 –18. Mr. Shah disseminating Mr. Prowker's allegations of fraud cannot be for the purpose of executing a scheme to defraud.

    **4.**    **The Government Failed to Prove that Mr. Shah Siloed Employees or Concealed Installation Numbers**

Count 5 of the Indictment charged Mr. Shah with siloing Outcome Health's employees and concealing Outcome's installation numbers. The Government's sole support of this Count is a November 14, 2015 email from Mr. Shah to Dave DiCosola in which he sensibly instructed Mr. DiCosola not to include all employees in emails discussing installations (GX 494). As an initial matter, the record makes clear that Outcome's sales team was included in many emails discussing installations, and knew that Outcome often contracted on projections. (Trial Tr. at 1879:24 – 1880:2 ["Q: But then we saw that on every single one of those campaigns, the salesmen, with additional e-mails that we showed you, was made aware of the projections; right? A: Yes."].)

In any event, Mr. Shah gave the instruction in GX 494 so that Outcome's sales team would not get confused. (GX 140 [Agarwal explaining, "the team doesn't know it's a projection because they get confused about how to represent it."]). Mr. Shah's directive had nothing to do with deceiving or siloing Outcome's employees to facilitate fraud; the Government's refusal to call Mr. DiCosola at trial to establish its speculative regarding Mr. Shah's email speaks volumes.

     **5.**     The Government Failed to Prove that Mr. Shah Engaged in Money Laundering

Counts 10 and 12 charged Mr. Shah with engaging in Money Laundering in connection with payments made for Mr. Shah's residence and flight transportation (GX577, GX571, GX587 GX1242). For the jury to convict Mr. Shah on these charges, the Government needed to prove beyond a reasonable doubt that: 1) Mr. Shah engaged in a monetary transaction; 2) Mr. Shah knew that the transaction involved criminally derived property; 3) the property value exceeded $10,000; 4) the property was derived from bank fraud; and 5) the transaction occurred in the United States.  For the reasons outlined *supra*, the Government failed to provide sufficient evidence that Mr. Shah knowingly and intentionally engaged in any fraud, let alone that Mr. Shah intended to use money derived from fraud for personal purposes. Mr. Shah's conviction on this count must accordingly be overturned.

## III.    CONCLUSION

WHEREFORE, Mr. Shah respectfully requests this Honorable Court to enter a judgment of acquittal, or in the alternative, a new trial.

Dated:  July 14, 2023          Respectfully submitted,


                    HUESTON HENNIGAN LLP

                    By:  */s/ Vicki Chou*

                        Vicki Chou
                        John C. Hueston
                        Michael Todisco
                        Karen Ding
                        Attorneys for Defendant
                        Rishi Shah

- 12 -