IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RISHI SHAH, et al.,<br>Defendants. | Case No. 19 CR 864<br>Judge Thomas M. Durkin |

**DEFENDANTS' JOINT RESPONSE**
**IN OPPOSITION TO THE GOVERNMENT'S POSITION ON LENDER LOSS**

In its August 19, 2026 Order ("Order") (Doc. #1045), this Court found that three lenders—MJX Asset Management ("MJX"), Column Park Asset Management ("Column Park"), and JPMorgan Chase Bank ("JPMC") (together, the "Three Lenders")—were entitled to restitution because, unlike other lenders who cashed out, they "chose to keep their interests in Outcome after the revelation of the fraud and the settlement, which was then exchanged for new debt and/or equity as part of the 2019 restructuring." Order (Doc. #1045) at 31. The Court directed the parties to "calculate the offset due for each of these three lender victims" based on "the value of Outcome at the time of settlement described in Section III(a)"—that is, the February 1, 2018, valuation analysis the Court applied to the institutional investors. *Id.* at 32.

The Government's September 4, 2026, submission (the "Proposal") suggests a mathematical shortcut: it takes the 41.97% figure representing "the value of the ***investors'*** remaining interest in Outcome" and applies that same percentage, unmodified, to MJX, Column Park, and JPMC to arrive at proposed restitution figures of $1,455,074, $7,124,934, and $1,568,899, respectively. Proposal (Doc. #1048) at 2 (emphasis added). That approach is incorrect for three independent reasons: (1) the Proposal ignores that the Court's valuation (like both

experts' valuations) is ***post-***debt (i.e., an equity valuation), which implicitly assumes debtholders would recover before the investors; (2) the lenders received fair value in the 2019 restructuring; and (3) the Proposal improperly equates debt and equity. For those reasons, this Court should deny the Government's request for additional restitution for the Three Lenders.[1]

## DISCUSSION

### I. The Government's Position Misconceives of the Relationship Between the Lenders and the Equity Holders

The Proposal ignores the meaning of "equity," which is what both experts and the Order attempted to get at in their valuations. "Equity" is ***post***-debt: it asks what the company would be worth ***if all its debts were paid***. All agree on that principle. *See, e.g.*, 9/4/2024 Tr. (Doc. #889) at 156:3–157:1 (J. Johnston confirming that "whatever value [investors] see in the company, they have to see that value as an equity value considering the debt"); *id.* (J. Johnston confirming that equity value considers the debt); *id.* at 60:3–10 (J. Johnston explaining that "debt holders get paid off before the equity holders get any value, and so that's where you result in an equity value"); *id.* 128:17–19 (J. Johnston agreeing that equity value is post-debt); 6/26/2024 Tr. (Doc. #849) at 57:3–11 (Saba confirming that "equity values already take the debt out"); *id.* at 151:21–152:5 (explaining that equity value is "the value of the company after paying the debts"). By that same logic, the ***pre-debt*** value of Outcome is its equity value—which the Court found to be approximately $191.6 million—***plus*** its debt (or, more precisely, the value of the company's assets that would be needed to cover its debt). Thus, in considering Outcome's value ***to debtholders*** like the Three Lenders, the debt must be added back in.

[1] The Court's order requesting this response specified that the Defendants were not to "restate arguments already made and dealt with in the Court's previous orders." Order (Doc. #1049). The discussion herein therefore presumes the accuracy of the Court's restitution finding in its earlier Order (Doc. #1045). Defendants reserve their right to challenge that determination and the method that produced it in future proceedings, whether before this Court or on appeal.

The Three Lenders's debt was superior to the institutional investors (i.e., the equity holders). Since debt is repaid before equity holders receive anything, the Court's finding as to Outcome's equity value of $192 million necessarily assumes Outcome had more than enough money to repay the Three Lenders in full. Thus, "based on the value of Outcome at the time of settlement described in Section III(a)," Order (Doc. #1045) at 31, nothing is owed to the Three Lenders, since the Court's finding implies that Outcome had enough value at that time to cover all Three Lenders' debts (plus $192 million more).

## II. The Three Lenders Received Fair Value in the 2019 Restructuring

The MVRA requires the Court to determine the amount of a victim's loss net of amounts already returned as of the date of the restitution determination. *See* 18 U.S.C. § 3663A(b)(1)(B)(ii); *see also* Order (Doc. #1045) at 15. The Order considered the value of Outcome as of February ***2018***, when Defendants settled with the investors and relinquished control of Outcome. *See* Order (Doc. #1045) at 17 (finding that the relevant date for determining any offset is February 2018). It found that the settlement conveyed approximately $192 million in value back to the institutional investors, thereby reducing the restitution owed to them to approximately $265 million.

The Three Lenders, however, did not restructure their debt in the 2018 settlement. *See id.* at 29 (acknowledging that the Three Lenders did not restructure their debt until 2019). As of 2018, nothing changed for the Three Lenders: they held the same claim against Outcome they did before discovery of the fraud, and Outcome retained more than sufficient assets to repay it. *See supra* § I.

When the Three Lenders finally traded in their debt in 2019, they did so for fair value. As Defendants' prior submissions to the Court established (and the Government has never before disputed), the lenders' loans were repaid in full as part of the 2019 restructuring, either through

paydowns, sale proceeds, or the debt and equity received in that restructuring.[2] Nor did the Three Lenders have the proverbial "gun to their heads": the Three Lenders' claims all had priority over the investors' and, as the Order found, Outcome had far more value than needed to repay the Three Lenders (and all of its other creditors). There is no reason to believe that the Three Lenders would have exchanged their debt for debt-plus-equity unless they believed those new holdings had at least as much (if not more) value as their preexisting, recoverable, priority debt claim. Thus, since restitution is based on what lenders are still owed ***today***, there is nothing left to be repaid to the lenders: they already received fair value (and likely more) in the 2019 restructuring.

### III. The Government's Proposal Impermissibly Equates Debt and Equity

In contrast to the analysis above, the Government's Proposal suggests taking the value returned to investors in the ***2018*** settlement (as a percentage of what the investors paid in ***2017***) and multiplying that number by the Three Lenders' restitution claims. That approach mixes apples and oranges: it multiplies a percentage derived from the ***post-debt*** value of Outcome in ***2018*** by what the lenders claimed they were owed after the ***2019*** restructuring. But the Three Lenders didn't get anything in the 2018 settlement, and the value of the investors' ***equity*** in Outcome (whether in 2018 or 2019) is entirely unrelated to the value of Outcome's ***debt*** to the Three Lenders.

The Court's determination that the investors received equity equal to approximately 41.97% of their initial investment in the 2018 settlement and restructuring reflects an analysis of the ***residual*** value of Outcome ***after*** senior debt claims are satisfied (ahead of claims by equity-

[2] *See* Def. Joint Submission (Doc. #870) at 14–16 (explaining that "the loans at issue in this case have been almost entirely repaid," and that the Government's own expert acknowledged that a substantial portion of the Term B loan principal was repaid using settlement proceeds); Gov't Outline Regarding Restitution (Doc. #854) at 19 (acknowledging that, in 2019, MJX's debt was "converted to a Second Lien PIK [payment-in-kind] Term Loan (***along with some additional equity***)" (emphasis added)); *id.* at 20 (acknowledging that Column Park "received a 'package of instruments' including both debt ***and equity***" (emphasis added)); *id.* at 23 (acknowledging similar value received by JPMC).

holders). *See* Order (Doc. #1045) at 18–19, 28 (describing the parties' respective use of an Option Pricing Model to "determine the value of the investors' equity under the post-settlement structure"). Nothing about that equity-specific finding establishes (or even addresses) what if any of their Three Lenders' claims remains to be repaid.

Debt and equity are fundamentally different instruments with different risk profiles, different priorities, and different recovery mechanics, and a valuation percentage derived from one cannot simply be transplanted onto the other. There is no accepted valuation method that would take a metric calculated for a subordinate claim and apply it wholesale, as the Proposal suggests, to a senior, fixed claim, without any analysis of what specific debt and equity interests the Three Lenders received were actually worth. Thus, even if the Three Lenders were still owed restitution after the 2019 restructuring (which, as explained above, they were not), the Proposal fails to employ a reliable methodology to arrive at a reasonable estimate of what that amount might be.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court reject the Government's Proposal. Notwithstanding the failure of the parties to reach an agreement as of the date of this filing, the parties continue to engage in productive conversations in an attempt to reach a resolution of the outstanding issues. The parties have agreed to file a joint status report with the Court on or before September 25, 2026, regarding the status of those discussions and any potential agreements or stipulations.

Dated: September 11, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER, LLP
By: */s/ Richard E. Finneran*
Richard E. Finneran
Hannah E. Demand
211 North Broadway, Suite 3600
St. Louis, Missouri 63012

Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*hannah.demand@bryancave.com*

*Counsel for Defendant Rishi Shah*

*/s/ Patrick W. Blegen*
Patrick W. Blegen
BLEGEN & ASSOCIATES

*Counsel for Defendant Shradha Agarwal*

*/s/ Theodore T. Poulos*
Theodore T. Poulos
COTSIRILOS, TIGHE, STREICKER,
POULOS & CAMPBELL, LTD.
55 E. Monroe St., Ste. 3250
Chicago, IL 60603

*Counsel for Defendant Brad Purdy*